# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

NELLIE RAY and MARY WELDY,      )
         Plaintiffs,          )
                       )
    v.                   )     CAUSE NO.: 2:07-CV-246-JTM-PRC
                       )
FOREST RIVER, INC.,          )
         Defendant.         )

## FINDINGS, REPORT, AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE PURSUANT TO
## 28 U.S.C. § 636(b)(1)(B) & (C)

This matter is before the Court on (1) Forest River's Motion for Summary Judgment [DE 25], filed by Defendant Forest River, Inc. on April 6, 2009; (2) Plaintiffs' Motion to Strike Portions of Paragraph 3 of Ruth VanVorst's Affidavit [DE 31], filed by Plaintiffs on May 11, 2009; (3) Plaintiffs' Motion to Strike Paragraphs 5 & 6 of Angela Garza's Affidavit [DE 32], filed by Plaintiffs on May 11, 2009; (4) Plaintiffs' Motion to Strike Paragraphs 13 & 14 of Steve Carner's Affidavit [DE 33], filed by Plaintiffs on May 11, 2009; (5) Plaintiffs' Motion to Strike Paragraph 9 of Shannon Troup's Affidavit [DE 35], filed by Plaintiffs on May 11, 2009; (6) Defendant's Motion to Strike [DE 40], filed on June 2, 2009; and (7) Plaintiffs' Motion for Oral Argument [DE 46], filed by Plaintiffs on September 15, 2009.

On August 7, 2009, District Court Judge James T. Moody entered an Order [DE 25] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant motions pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court recommends that the District Court enter rulings on the Motions

to Strike as set forth herein, deny the Motion for Oral Argument, and deny the Motion for Summary Judgment.

## PROCEDURAL BACKGROUND

On June 2, 2006, Plaintiffs were laid off from their employment with Forest River. One month later, they filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that they had been targeted because of their age. Their age claim rests on the age of the women who were alleged to have replaced Plaintiffs–Shannon Troup and Angie Heltzel–both of whom were significantly younger than Plaintiffs. After its investigation, the EEOC issued a finding of no probable cause and sent a Dismissal and Notice of Right to Sue on April 30, 2007.

Plaintiffs filed their Complaint in this Court on July 27, 2007, alleging that they were selected for layoff because of their age in violation of the Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C. § 621 et seq. ("ADEA"). Forest River filed an Answer on September 26, 2007. On April 6, 2009, Forest River filed the instant Motion for Summary Judgment, a Brief in Support, and exhibits. On May 11, 2009, Plaintiffs filed their Response in Opposition with exhibits as well as four Rule 56 Motions to Strike. Forest River filed its Reply in support of Summary Judgment, a Motion to Strike, and a Response to Plaintiffs' Motions to Strike on June 2, 2009. Plaintiffs filed a Response to Forest River's Motion to Strike on June 17, 2009. On June 23, 2009, Forest River filed a Supplement to its Motion for Summary Judgment. Plaintiffs filed a Motion for Oral Argument on September 15, 2009, and Forest River filed a response in opposition on September 16, 2009.

# MOTIONS TO STRIKE

## A.  Plaintiffs' Motion to Strike Portions of Paragraph 3 of Ruth VanVorst's Affidavit

Ruth VanVorst's Affidavit provides that "the facts contained in this affidavit are true to my own knowledge," and Paragraph 3 provides:

> As part of my job, I worked with and knew Nellie Ray ("Nellie") and Mary Weldy [("Helen")], who built curtains, valances and inserts for Forest River RVs. Occasionally, I was asked to help Nellie and [Helen] with the inserts.  I thought Nellie and [Helen] were good at their jobs, but they were not able to perform any other work on the line or in Plant 27.

Def. Exh. 12, ¶ 3.  Plaintiffs argue that the final sentence of the paragraph should be stricken as an impermissible opinion that does not fall within the limits of Federal Rule of Evidence 701 for lay opinions,[1] because Ms. VanVorst's statement is tantamount to a vocational opinion.  The objection appears to be moot because Forest River does not cite this paragraph of Ms. VanVorst's Affidavit in its briefs.  Nevertheless, Ms. VanVorst's Affidavit provides that her statements are made upon personal knowledge and are based on her personal experience when she "worked with" and "knew" Plaintiffs.  There are no statements in her Affidavit regarding Plaintiffs' mental or physical capabilities, and, as a result, she does not give an expert opinion.  Accordingly, Ms. VanVorst's testimony is "rationally based on [her] perception," is "grounded in observation" and "first-hand personal experience," and is not a "flight[] of fancy, speculation[], hunch[], intuition[], or rumor[] about matters remote from that experience," thus meeting the requirements of Federal Rules of

---

[1]  Rule 701 provides:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

Evidence 602 and 701 and Federal Rule of Civil Procedure 56(e). *See* Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge."); Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) (quoting *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991)); *see also Heltzel v. Dutchmen Mfg., Inc.*, 3:06-CV-227, 2007 WL 4556735, at * 4 (N.D. Ind. Dec. 20, 2007). Plaintiffs' arguments go to the weight of the testimony rather than its admissibility, and the Court recommends that the District Court deny the motion.

### B. Plaintiffs' Motion to Strike Paragraphs 5 & 6 of Angela Garza's Affidavit

Ms. Garza's Affidavit provides that she has personal knowledge of the facts therein, and paragraph 5 specifically provides:

> I understood the only reasons that Nellie and Mary were considered as candidates for layoff were because they (i) were unable to maintain production requirements and keep up with the demands of the production line; (ii) lacked experience and transferable skills in other areas of the production process and therefore, neither could be considered for a consolidated position following the layoff; and (iii) they had demonstrated an uncooperative attitude about learning different skills. Age was not a factor for consideration in the decision to layoff either Nellie or Mary, or any other employee of Forest River.

Def. Exh. 9, ¶ 5. Based on the mistaken belief that Ms. Garza states in paragraph 6 of the Affidavit that she was *not* involved in the process of determining which employees would be laid off from Plant 27 in June 2006, Plaintiffs conclude that her statement in paragraph 5 must be based upon prohibited hearsay. Because Ms. Garza in fact states that she was involved in the decisionmaking process, she had personal knowledge of her statements in paragraph 5.

Plaintiffs also object to the second statement in paragraph 6, which provides: "That decision rested with Jamie Albrecht," Def. Exh. 9, ¶ 6. Plaintiffs argue that the statement directly contradicts

Forest River's answer to Plaintiffs' Interrogatories 1-2(c), 1-5, and 1-6. Interrogatory 1-2(c) asked Forest River to state the "Name, title and age of the person who decided that [Plaintiffs] should be selected for layoff or job elimination." Pl. Exh. 1. Forest River answered: "Ann Littlejohn recommended Plaintiffs for layoff, and Steve Carner and Jamie Albrecht, the General Manager overseeing Plant 27, approved the decision." *Id*. Notably, Ms. Garza does not claim that Mr. Albrecht had *independent* authority to make the final decision, and Forest River does not claim in any discovery response that Mr. Carner was not a decisionmaker regarding the layoffs. The statements are not inconsistent nor is Forest River creating a "sham issue[] of fact with affidavits." Pl. Mot. to Strike, p. 3. Neither of the responses to Interrogatories 1-5 and 1-6 conflicts with Ms. Garza's statement about Mr. Albrecht's authority either.[2] Those interrogatories sought information about specific job positions (Plant Manager and Assistant Plant Manager, respectively), neither of which was held by Mr. Albrecht, and the responses addressed the individuals who held those positions (Mr. Carner and Joseph Littlejohn, respectively) without reference to Mr. Albrecht. The Court recommends that the District Court deny the motion.

### C. Plaintiffs' Motion to Strike Paragraphs 13 & 14 of Steve Carner's Affidavit

In paragraph 13 of his Affidavit, Mr. Carner avers: "I did not have independent authority to decide which employees were retained and which were terminated during the June 2, 2006 layoff." Def. Exh. 4, ¶ 13. In paragraph 14, Mr. Carner avers: "I did not have the independent authority to select Nellie or [Helen] for termination during the June 2, 2006 layoff." *Id*. at ¶ 14. As with Ms. Garza, Plaintiffs argue that these statements are inconsistent with Forest River's answers

---

[2] In response to Interrogatory 1-5, Forest River stated that Mr. Carner had authority to "hire, fire, layoff and discipline employees at Plant 27." Pl. Exh. 3. In response to Interrogatory 1-6, Forest River answered that Joseph Littlejohn "made recommendations for hiring, firing, layoff and discipline decisions, subject to Mr. Carner's approval." *Id*.

to Interrogatories 1-2(c), 1-5, and 1-6.  Again, the Court finds that the statements in paragraphs 13 and 14 of Mr. Carner's Affidavit are consistent with each interrogatory answer and do not create "sham issues of fact with affidavits" as argued by Plaintiffs.  Pl. Br., p. 2.

First, the response to Interrogatory 1-2(c) provided that Ms. Littlejohn made the recommendation while Mr. Carner and Mr. Albrecht approved the decision.  This is consistent with Mr. Carner's Affidavit testimony that he did not have *independent* authority to decide who would be laid off or to select Plaintiffs for layoff.  Second, Interrogatory 1-5 asked who held the position of Plant Manager at Plant 27 between April 1, 2006, and July 1, 2006, and whether this Plant Manager had "authority to hire, fire, layoff or discipline employees."  Pl. Exh. 3.  Forest River identified Mr. Carner and answered that he did have the specified authority.  Forest River did not indicate that Mr. Carner had independent or sole authority to take those employment actions.  Third, Interrogatory 1-6 asked the identity of the Assistant Plant Manager for Plant 27 between April 1, 2006, and July 1, 2006.  Forest River identified Joseph Littlejohn (not "Ms. Littlejohn" as represented in Plaintiffs' Motion) as an individual who performed "manager-like duties" and had the employment authorities of Mr. Carner at Plant 27 "only when Mr. Carner was absent for an extended period of time."  *Id*.  Again, this response does not represent that Mr. Carner had independent authority to make the identified employment decisions.  The Court recommends that the District Court deny the motion.

### D.  Plaintiffs' Motion to Strike Paragraph 9 of Shannon Troup's Affidavit

Paragraph 9 of Shannon Troup's Affidavit provides:

> I was not part of the decision to lay off Nellie and [Helen], but I did understand that management wanted employees in the Final Finish department who could perform multiple jobs.  It appeared to me that Nellie and [Helen] could not do their job without the help of others and were not able to fill other positions in the plant.

Def. Exh. 11, ¶ 9. Plaintiffs argue that the first sentence of paragraph 9 is based solely on hearsay in light of the qualifying language in the opening phrase. This objection appears moot given that Forest River does not cite this paragraph of Ms. Troup's Affidavit in its briefs. Nevertheless, the Court finds that in the context of the paragraph, Troup's statement that "I did understand that management wanted employees in the Final Finish department who could perform multiple jobs" is hearsay. Both the introductory phrase to the first sentence as well as the second sentence refer to events and situations that occurred prior to Plaintiffs' termination and imply that Ms. Troup formed an understanding of what "management" wanted based on what she purportedly heard from others. Forest River's explanation that her statement is based on her increased workload after the layoffs is not supported by the language of the paragraph, and Ms. Troup's testimony in earlier paragraphs regarding the expansion of her job responsibilities following Plaintiffs' termination does not change the meaning of the words in paragraph 9.

Plaintiffs also seek to strike the second sentence of the paragraph, arguing, as they did with Ms. VanVorst, that Forest River has not designated Ms. Troup as an expert witness to give a vocational opinion and that this opinion falls outside the scope of permissible lay opinions under Rule 701. The sentence begins, "It appeared to me," and the opening paragraphs of the Affidavit provide that the facts therein are based on her "own knowledge" and that she has "personal knowledge of the facts in this affidavit." Def. Exh. 11. As with Ms. VanVorst, Ms. Troup does not evaluate Plaintiffs' physical or mental abilities, is not offering an expert opinion, and meets the requirements of Rules of Evidence 602 and 701 and Rule 56(e). *Payne*, 337 F.3d at 772 (quoting *Visser*, 924 F.2d at 659); *see also Heltzel*, 2007 WL 4556735, at * 4. Plaintiffs' arguments go to the weight of the testimony rather than is admissibility.

The Court recommends that the District Court grant in part and deny in part the motion, striking only the first sentence of paragraph 9.

## E. Defendant's Motion to Strike

Forest River asks the Court to strike various statements from the declarations of Ms. Ray, Ms. Weldy, Angela J. Heltzel, and Rick Dixon submitted in support of Plaintiffs' Response in opposition to Forest River's Motion for Summary Judgment. The Court considers each in turn.

*1. Angela Heltzel's Declaration*

a. Paragraph 2

In this paragraph, Ms. Heltzel discusses numerous telephone conversations that she had with Mr. Rowe, Forest River's human resources manager, initiated by Mr. Rowe, regarding this lawsuit. Therein, she states:

> I refused to support Forest River even when Mr. Rowe promised me that if I cooperated with him, Forest River would hire me back. He said "you can write my name at the top of the application and I'll see to it that you get hired." However, I declined to support Forest River because I believed Ruth and Helen were let go because of their age.

Pl. Exh. 2. Forest River argues that the last sentence is based solely on her "belief," not personal knowledge, and thus lacks foundation under Federal Rule of Evidence 602 and Federal Rule of Civil Procedure 56(e). Forest River also argues that Ms. Heltzel's conversations with Mr. Rowe are irrelevant under Federal Rules of Evidence 401, 402, and 403.[3] Finally, Forest River argues that the paragraph, even if taken as true, does not prove discrimination nor does it establish that Plaintiffs

---

[3] Forest River also invokes Federal Rule of Civil Procedure 12(f) for many of its objections. However, Rule 12(f) applies to pleadings, which are enumerated in Rule 7 as a complaint, answer to a complaint, an answer to a counterclaim designated as a counterclaim, an answer to a crossclaim, a third-party complaint, an answer to a third-party complaint, and a reply to an answer if the court orders one. Fed. R. Civ. P. 7(a). The declarations and affidavits submitted in support of the pending motions are not pleadings, and, thus, Rule 12(f) is inapplicable.

would not have been terminated despite their ages. These objections appear moot given that Plaintiffs do not cite this paragraph of Ms. Heltzel's Declaration.

Nevertheless, Plaintiffs respond that Ms. Heltzel's belief is not being offered to prove that discrimination in fact occurred but rather for the limited purpose of providing the context in which Mr. Rowe's offer of employment to Ms. Heltzel was made. Plaintiffs reason that Mr. Rowe's offer of employment was made not because Forest River was short handed but rather "to buy the testimony of a seemingly hostile witness." Pl. Resp. Br., p. 2. The Court finds that this evidence is relevant to Mr. Rowe's state of mind and that it has an adequate foundation for the limited use suggested by Plaintiffs. Therefore, the Court recommends that the District Court deny the Motion to Strike as to paragraph 2 of Ms. Heltzel's declaration and that this paragraph be limited to the use set forth by Plaintiffs.

b. Paragraph 4

In paragraph 4, Ms. Heltzel describes a notebook in which she detailed what she learned when assisting Plaintiffs in building valances; she took the notes at Mr. Carner's request. She states that Ms. Littlejohn copied the notebook approximately four weeks before Plaintiffs' employment was terminated. Forest River argues that this information is immaterial and, thus, inadmissible under Rules 401, 402, and 403. Plaintiffs reason that this evidence is admissible in light of Forest River's interrogatory response that the criteria considered in the layoff process to evaluate whether an employee was able to maintain production in a given department were "skills; their ability to perform additional tasks; willingness to handle additional tasks; willingness to handle additional responsibilities; knowledge of other job functions; attitude; productivity; any discipline or attendance issues; and seniority." Pl. Exh. 1. Plaintiffs reason that Ms. Heltzel's testimony goes

to Plaintiffs' skills and productivity. Plaintiffs also reason that the testimony supports an inference about the timing of Mr. Carner's decision to terminate Plaintiffs in contradiction to Forest River's explanation that Plaintiffs were chosen as a result of a production slow down. Although a trier of fact may draw various inferences therefrom, the Court finds that the testimony is relevant and recommends that the District Court deny the Motion to Strike as to paragraph 4 of Ms. Heltzel's Declaration.

c. Paragraph 6

In paragraph 6, Ms. Heltzel testifies:

> Working closely beside Ruth and Helen, I soon became impressed with their skill and hard work. From my observations, Ruth and Helen never missed work; never complained; and never refused to do any task asked of them. Between the two of them, Ruth and Helen had an extremely efficient production method. They worked very well together. They worked very quickly. By my observation, the quality of the work by Ruth and Helen was excellent.

Pl. Exh. 2. Forest River argues that these statements are speculative and lack foundation because they use the absolute term "never" yet Ms. Heltzel was simply Plaintiffs' co-worker who worked with them for sixty percent of the time for less than six months. The Court finds that this testimony is properly limited to Ms. Heltzel's personal observations during the time that she worked with Plaintiffs by the qualifying phrases "[f]rom my observations" and "[b]y my observation." The limits of Ms. Heltzel's contacts with Plaintiffs go to the weight of her testimony, not to its admissibility. The Court recommends that the District Court deny the Motion to Strike as to paragraph 6 of Ms. Heltzel's Declaration.

d. Paragraph 7

In paragraph 7, Ms. Heltzel testifies, "Ruth and Helen would have had no trouble learning how to do these odd jobs." Pl. Exh. 2. Forest River argues that, even if true, this statement is immaterial because Forest River has not argued that learning ability was a reason for Plaintiffs' layoff and because the wisdom of Forest River's business decision is not an issue before the Court. Again, Forest River put Plaintiffs' ability to do other jobs at issue through its interrogatory response, which alleges that Plaintiffs "were having trouble keeping up with production; they expressed an unwillingness and inability to perform additional or different duties; and their skills, apparent interests and experiences were limited to building valances." Pl. Exh. 1, p. 6. Whether Mr. Carner and Ms. Littlejohn perceived Plaintiffs as unable to learn new jobs because of their age is relevant, and the Court recommends that the District Court deny the Motion to Strike as to paragraph 7 of Ms. Heltzel's Declaration.

e. Paragraphs 8, 10, 11

In these paragraphs, Ms. Heltzel criticizes the job performance of Shannon Troup, an employee who took over the production of valances with Ms. Heltzel from Plaintiffs. Forest River argues that these "attacks" do not advance Plaintiffs' claims, do not meet legal standards of materiality, and are inadmissible under Rules 401, 402, and 403 because the issue before the Court is not the wisdom of Forest River's business decision but rather whether Forest River's stated reason for the layoff was a pretext. Paragraph 8 contains Ms. Heltzel's observations of Ms. Troup's job performance prior to Plaintiffs' termination and thus is relevant to whether Forest River's explanation for retaining Ms. Troup over Plaintiffs is a pretext. In contrast, paragraphs 10 and 11 relate to Ms. Troup's job performance after Plaintiffs were laid off, which is not relevant to Forest

River's decision.  *See Glover v. U.S. Healthworks*, 326 F. App'x 964, 968 (7th Cir. 2009) (holding

that the relevant inquiry is not whether retaining plaintiff would have been a better business decision

but, rather, whether the decisionmakers "honestly believed that keeping [the plaintiff] was the best

decision, whether or not that decision proved correct in the end") (citing *Atanus v. Perry*, 520 F.3d

662, 674 (7th Cir. 2008)).  The Court recommends that the District Court deny the Motion to Strike

as to paragraph 8 and grant the Motion to Strike as to paragraphs 10 and 11 of Ms. Heltzel's

Declaration.

*2.  Rick Dixon's Declaration*

In paragraph 4, Rick Dixon testifies:  "In my opinion, Ms. Ray and Ms. Weldy were very

efficient workers.  They were hard working and showed up for work everyday on time.  The quality

of their work was excellent."  Pl. Exh. 4.  Forest River argues that this statement lacks foundation

because, although Mr. Dixon was a group leader, he was not the group leader for the half of the

Final Finish Department in which Plaintiffs worked and thus did not have sufficient opportunities

to observe and have personal knowledge of Plaintiffs' performance.  The Court finds that Mr. Dixon

has demonstrated sufficient personal knowledge to provide a foundation for the testimony because

he worked in the same department as Plaintiffs as a supervisor and he states in his Declaration that

he has personal knowledge of every statement therein.  The fact that Mr. Dixon was a supervisor in

a different half of the department goes to the weight of his testimony rather than its admissibility.

The Court recommends that the District Court deny the Motion to Strike as to Mr. Dixon.

*3.  Mary Helen Weldy's Declaration*

Paragraph 2 of Ms. Weldy's Declaration provides:  "I have read my sister's affidavit and I

agree with her representations about the events that occurred while we worked together at Forest

River."  Pl. Exh. 7.  Forest River argues that this statement is inadmissible as self-serving and contradictory, reasoning that Ms. Weldy has offered no independent knowledge of the matters in her sister's declaration.  However, in paragraph 1, Ms. Weldy testifies that she has "personal knowledge of the facts contained in this Declaration."  *Id*.  The Court recommends that the District Court deny the Motion to Strike as to Ms. Weldy.

### 4. Nellie Ruth Ray's Declaration

In paragraphs 2 and 6 of her Declaration, Ms. Ray describes the odd jobs that she and Ms. Weldy performed during their employment, including the process for building curtains and "puttying."  She testifies that management never asked that she be "cross trained" and never gave Plaintiffs a chance to perform other work.  Forest River argues that this information is immaterial and irrelevant and, thus, inadmissible under Rules 401, 402, and 403 because, even if true, these facts do not demonstrate that Forest River's stated reasons for the layoff were a pretext or that Plaintiffs would not have lost their jobs if they were younger.  However, as with paragraph 7 of Ms. Heltzel's Declaration, this testimony goes to Plaintiffs' "unwillingness or ability to perform additional tasks," "their skills," and whether their "apparent interests and experiences were limited to building valances," Pl. Exh. 1 (Forest River's response to interrogatory 1-2), which were criteria Forest River stated it used to select Plaintiffs for termination.[4]  The Court recommends that the District Court deny the Motion to Strike as to Ms. Ray.

---

[4] In its Reply Brief, Forest River also argues that Ms. Ray's Declaration statement that they "never refused to do an extra job or cooperate" with Forest River management is self-serving and should not be considered in light of Ms. Ray's deposition testimony that she and her sister did not regularly help in other areas after their specific duties were complete.  There is nothing inconsistent between Ms. Ray's statements.  Her Declaration does not contradict her deposition testimony but rather addresses a specific argument raised by Forest River in its Motion for Summary Judgment that was not addressed in her deposition.  Moreover, the statement is based on her personal knowledge and is a disputed issue of fact to be resolved by the trier of fact.

# MOTION FOR SUMMARY JUDGMENT

## A. Summary Judgment Standard

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *See id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir.

1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990).  However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists.  *See Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings.  *See* Fed. R. Civ. P. 56(e)(2); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994).  Rule 56(e) establishes that the opposing party's "response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party.  *See Anderson*, 477 U.S. at 255; *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994).  A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact.  *See Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443.

## B. Material Facts

*1. Plaintiffs' Employment*

Forest River manufactures recreational vehicles ("RVs") at multiple facilities in Indiana, with its principal place of business in Elkhart, Indiana. Forest River hired Plaintiffs in January 2002 into the Final Finish Department at the company's Plant 27. Plaintiffs were interviewed and hired by Steve Carner, the Plant 27 Manager. At the time of hire, Ms. Ray was 58 years old and Ms. Weldy was 55 years old.

The Final Finish Department included employees who worked on the production line, such as those who installed cabinets, curtains, and other "finishing" parts; and it included employees like Plaintiffs, who performed "off-line" duties. Specifically, Plaintiffs built valances, curtains, and other parts for assembly into RVs. A valance is a decorative cover for curtains and other window treatments. It is essentially a wooden "box" made from plywood and styrofoam and covered in fabric. The valance is held together by glue, staples, and nails, and an insert is installed in each valance. To build a valance, the underlying wood must be stapled together to form the box, styrofoam is glued to the wood and then the excess is trimmed, and fabric material is cut by hand after measurements are taken and then attached to the box with staples. The valances are then installed by other employees over the doors and windows of the RV units.

In addition to valances, Plaintiffs sometimes wrapped, prepared and/or staged curtains, blinds, and decorative boards and other parts that were later installed by other employees. At one time, Plaintiffs would occasionally putty, rough sweep, and put stickers on all the units. When building valances at the Goshen location from which they were laid off, Plaintiffs were located on a mezzanine or raised loft area, isolated from the remainder of the work force. The Plaintiffs' duties

did not include working on the production line, except for their experience with puttying, rough sweeping, and putting on stickers, and they were not trained to do any other jobs such as hanging valances or curtains.

As part of their job, Plaintiffs were required to maintain a one-day "bank" of completed valances ready for installation in the production line. Plaintiffs understood their responsibility to stay one day ahead. Ms. Ray explained that, at one point in time, they had more than a day or two days' worth of valances completed. However, in December 2005, Plaintiffs began to fall behind in their valance production and repeatedly asked their supervisor, Ann Littlejohn for assistance.

In December 2005, Forest River issued Personnel Action Notices ("Notices") to Ms. Ray and Ms. Weldy, signed by Ms. Littlejohn, for failing to meet the performance standards and to maintain the required "bank." Both Notices provide that each Plaintiff "needs to work on her time frame of completed units. She has had verbal warnings and needs to be able to keep ahead of the line production. If unable to complete units and do it on the time frame given units will be taken from her." Def. Exhs. 6, 7. Ms. Ray refused to read or sign her Notice. Ms. Weldy originally signed a Notice, but it appears that it was the notice for Ms. Ray. Ms. Weldy subsequently scratched out her signature, and her Notice remains unsigned. Nevertheless, Plaintiffs both confirm that they were disciplined for failing to keep up with production, and Ms. Weldy stated that she was upset about the write-up.

In early January 2006, Jamie Albrecht, Production Manager for Plant 27, led a meeting involving Plaintiffs and their supervisors, Ms. Littlejohn (Final Finish Department Group Leader) and Mr. Carner (Plant 27 Manager), as well as Forest River's Human Resources Manager, Angie Garza. Together, the parties established a requirement that Plaintiffs would maintain a minimum

one-day "bank."[5]  The pace of production was important because Forest River employees earned more money when they performed more quickly, which was called "rate."

Plaintiffs both stated that Ms. Littlejohn wanted them to maintain a two-day bank at that point.  Ms. Ray also stated that Mr. Carner imposed the two-day bank.  Although Mr. Albrecht established a one-day bank at the meeting in January 2006, Plaintiffs felt that it was expected that they maintain a two-day bank.  Ms. Weldy explained that they fell behind because they were also asked to "pick up another position" by doing the inserts for "slide outs" when a fellow employee was absent from work.  Def. Exh. 2, p. 104.  Ms. Weldy testified that, although they did not maintain their bank at that point in time, they nevertheless stayed ahead of the production line's need for valances.

As the production increased at Plant 27, Plaintiffs' responsibilities for curtains and inserts were shifted to other individuals while Plaintiffs continued to build valances.  An employee (named "Nitza") was responsible for "staging" the curtains.  For a time, she also assisted with building inserts.  However, when she left Forest River, Plaintiffs re-assumed those responsibilities.  Forest River assigned various other employees to help out from time to time.  Forest River provided Plaintiffs with new tools to increase their production speed, including power scissors provided within approximately six months prior to the layoff, yet Plaintiffs were not able to meet the goals set.

In about mid-January 2006, Forest River hired Angie Heltzel to help Plaintiffs at a time when Plant 27 was producing 22-24 trailers per day.  At that time, Plaintiffs built all of the valances for those units.  Each trailer would require a minimum of 10 to 12 valances.  Ms. Heltzel testified that

---

[5] Mr. Albrecht, Mr. Carner, and Ms. Littlejohn each reference a one-day bank in their Affidavits and do not mention working toward a two-day bank.  Ms. Ray alone refers to that meeting resulting in a two-day bank.

building valances is time consuming and is sometimes a complicated task that requires careful measurements. Working closely beside Plaintiffs, Ms. Heltzel soon became impressed with their skill and hard work. From her observations, Plaintiffs never missed work, never complained, and never refused to do any task asked of them. Ms. Heltzel felt that Plaintiffs had an "extremely efficient production method" between the two of them and that they worked very well together. Pl. Exh. 2, ¶ 6. She also felt that they worked quickly. By her observation, Ms. Heltzel felt the quality of work by Plaintiffs was excellent.

As Ms. Heltzel was learning the valance job from Plaintiffs, Mr. Carner asked her to his office to inquire how her training was progressing. He asked her whether she was taking notes, and she told him that she was. Ms. Heltzel testified that, early on, Mr. Carner did not criticize Plaintiffs but that about approximately one month prior to their termination, Mr. Carner began making unkind statements about Plaintiffs to Ms. Heltzel on several occasions. He referred to them as "old Bitches," he stated that Plaintiffs were not capable of learning anything other than making valances because they were set in their ways on account of their age, and he said things such as "Them old bags need to go[.]" Pl. Exh. 2, ¶ 9 (Heltzel Decl.). Ms. Heltzel testified that Ms. Littlejohn was harsher than Mr. Carner, repeatedly referring to Plaintiffs as "fucking old bags" and stating that they were "too old to move around the plant" before Plaintiffs were laid off. *Id.* However, neither Mr. Carner nor Ms. Littlejohn ever criticized the quality of Plaintiffs' valance work to Ms. Heltzel. In fact, Mr. Carner instructed Ms. Heltzel to learn everything that she could about building valances from Plaintiffs.

From time to time in the sixth-month period before Plaintiffs were laid off, Ms. Heltzel was taken off working on valances and was assigned odd jobs on the production line, including installing

valances.  On some of these occasions, Ms. Heltzel had an opportunity to interact with Ms. Troup.  Ms. Heltzel recalled observing Ms. Troup struggle to keep up with the pace on the production line, no matter what task she was given.  For a time, Ms. Troup was on "caulking," but Ms. Heltzel observed that she moved too slowly, could not keep up with the line, and was taken off caulking.  Then Ms. Troup was assigned "puttying," and, according to Ms. Heltzel, she could not keep up with the pace of the production line and was removed from that task.  Ms. Troup was next assigned to putting curtains on rods, and she struggled to keep up with this task as well.  Ms. Heltzel testified that Ms. Troup liked to visit with co-workers, had trouble focusing on the task at hand, and had trouble following instructions.  Forest River's personnel file on Ms. Troup contains five separate written warnings in October 2005 (2), December 2005 (2), and April 2006 (1) in the form of Personnel Action Notices.  The first four warnings referenced her difficulty in maintaining pace.  Two of the warnings mentioned the possibility of termination if improvements did not occur in the pace and quality of her work.

Rick Dixon was a group leader in the Final Finish Department in Plant 27 at the time Plaintiffs worked there, but he was the supervisor in the other half of the department; Ms. Littlejohn was Plaintiffs' direct supervisor.  Mr. Dixon felt that Plaintiffs were very efficient workers, were hard working, and showed up for work everyday on time.  From his observation, the quality of Plaintiffs' work was excellent.  Mr. Dixon recalled that Ms. Littlejohn complimented Plaintiffs on the efficiency of their system.  However, prior to Plaintiffs' termination, Mr. Dixon heard Ms. Littlejohn refer to Plaintiffs as either the "old ladies" or the "old bitches."  Pl. Exh. 4, ¶ 4.  Mr. Dixon also remembered Mr. Carner referring to Plaintiffs as the "old ladies" on numerous occasions prior to their termination.  Shortly after Plaintiffs were terminated, Mr. Dixon had a conversation

with Mr. Carner about why the two women were chosen for the layoff, during which Mr. Carner explained that he had selected them because "they were too old to move around the plant to do other jobs" or "they were too old to move around the final finish department."  Pl. Exh. 4, ¶ 3.

*2. The Layoff Decision*

At the time of Plaintiffs' layoff, Mr. Albrecht served as the Production Manager for Plant 27; Mr. Carner served as Plant Manager for Plant 27, reporting directly to Mr. Albrecht; and Ms. Littlejohn served as Group Leader in the Final Finish Department.  Plaintiffs reported directly to Ms. Littlejohn during the period at issue and at the time of their layoff.

In 2006, Ms. Littlejohn met with the Final Finish Department employees and asked them to "pitch-in" to support other areas of the department.  Ms. Littlejohn also participated in employee meetings conducted by Mr. Carner regarding cross training.  She testified that Plaintiffs repeatedly complained during these meetings, saying that they did not want to work long days.  She further testified that Plaintiffs were asked on numerous occasions to pitch-in and help in other areas but that, frequently, they would complain or find excuses not to assist.  She testified, "On occasion, I would ask them to stay late to help in other areas of Final Finish, especially when we were short employees.  They usually left work without helping."  Def. Exh. 5, ¶ 9.  Mr. Carner also testified that it seemed that Plaintiffs complained when they were asked to help and that, more than once, Plaintiffs refused to assist in other areas of production.

In their Declarations, Plaintiffs dispute that they were ever uncooperative or unwilling to lend a hand to perform other work when asked to do so or that they were ever counseled or disciplined for poor attitude.  Pl. Exh. 6, ¶ 3.  Ms. Ray stated in her deposition that, prior to the period of increased production, they would help out with other jobs such as puttying and rough

sweeping once they had accumulated their two-day bank but that, when their valance production demand went up to 22 vehicles per day, they did not help in other departments, staying on the mezzanine where they made valances. Plaintiffs also dispute that they ever complained to management about their work assignments or were ever counseled or disciplined for this alleged behavior. Pl. Exh. 6, ¶ 3. Plaintiffs dispute that they were offered cross training by management, and they dispute that they ever declined cross training. *Id.*

In late spring 2006, Forest River's production demands dropped and Plant 27's managers were told that layoffs would be necessary. At the direction of management, Ms. Littlejohn, as a Group Leader in the Final Finish Department, was asked to evaluate and recommend individuals to be retained or laid off and considered the skills of each individual, whether the employee could perform several different jobs, and the employee's attitude and willingness to undertake extra work. Ms. Littlejohn recommended Plaintiffs as candidates for the June 2, 2006 layoffs because they were unwilling to assist in other areas of the Final Finish Department and on the production line and because they lacked skills required to conduct other jobs in the plant. Mr. Carner, the Plant Manager, conferred with Mr. Albrecht as well as Plant 27's Group Leaders and representatives from Forest River's Human Resources Department to determine the size of Plant 27's reduction in force, the necessary skill sets to be retained, and how to ensure that those employees were trained to meet Plant 27's needs.

Mr. Albrecht, Production Manager for Plant 27, testified that he "understood that Nellie and [Helen] were generally unwilling to participate in the cross-training and were uncooperative when asked to help in other areas of Plant 27. I further understood that Nellie and [Helen] would leave work at the end of their own workday, even if their supervisor asked them to stay to help other

employees." Def. Exh. 3, ¶ 8.  Plaintiffs dispute that they ever left work early, without permission, or were ever counseled or disciplined for this alleged behavior.  Mr. Albrecht testified that he had "specifically checked into [Plaintiffs'] performance, attitude and ability to work in other areas.  It appeared that they did not want to work in other departments–even occasionally; and other employees had higher levels of skills and experience both inside and outside the Final Finish Department."  Def. Exh. 3, ¶ 11.  Plaintiffs dispute that the other tasks that might have been asked of them, had they been retained, were beyond their abilities as they had performed many of these same tasks at Plant 27 in the past.

Through her involvement with the layoff decisions, Angela Garza, the Human Resources Manager, understood that the reasons Plaintiffs were considered as candidates for layoff were because they were unable to maintain production requirements and keep up with the demands of the production line, they lacked experience and transferable skills in other areas of the production process and, thus, could not be considered for a consolidated position following the layoff, and they had demonstrated an uncooperative attitude about learning different skills.  Ms. Garza testified that the decision to layoff an employee rested with Mr. Albrecht.  She also testified that she received the list of candidates for layoff from Mr. Carner several days prior to the June 2, 2006 layoffs.

Mr. Carner told Mr. Dixon that he had selected Plaintiffs for layoff.  Both Mr. Carner and Mr. Albrecht stated in their Affidavits that they reviewed the candidates for layoff together.[6]  Mr.

---

[6] In its opening brief, Forest River cites to Mr. Albrecht's Affidavit as support for the statement that "Albrecht and Carner reviewed candidates for layoff and Albrecht made the final decisions."  Def. Br., p. 8 (citing Albrecht Aff. ¶ 9).  Mr. Albrecht made no statement in that paragraph regarding who made the final decision:

> In the spring of 2006, the rate of production fell and Plant 27 was forced to reduce its workforce. Group Leaders were told that layoffs would be necessary and that multi-skilled people were to be retained.  I reviewed candidates for layoff with the Plant Manager, and we looked at performance levels, skills, including cross-training, and the attitude of the employees.  We did not consider age as a factor in the decisions.

Def. Exh. 3, ¶ 9 (Albrecht Aff.).  Nor did he state elsewhere in his Affidavit that he, alone, made the final decisions.  In

Carner stated that he did not have "independent authority" to decide which employees were retained and which were terminated or to select Plaintiffs for termination during the layoff. Def. Exh. 4, ¶¶ 13, 14. In an interrogatory response, Forest River stated that "Ann Littlejohn recommended Plaintiffs for layoff, and Steve Carner and Jamie Albrecht, the General Manager overseeing Plant 27, approved the decision." Pl. Exh. 1. In a separate response regarding the responsibilities of the Plant Manager, Forest River stated that Mr. Carner had the authority to "hire, fire, layoff and discipline employees at Plant 27." Pl. Exh. 3.

At the time of the layoff, approximately four and a half years after they had started working at Forest River, Ms. Ray was 62 and Ms. Weldy was 59 years old. Mr. Albrecht testified that the layoffs affected a diverse work group including men, women, older employees, and younger employees.

*3. Plaintiffs' Replacements Following Layoff*

Following the layoff, Ms. Heltzel and Ms. Troup, ages 42 and 26 respectively (in May 2009), took over building curtains and valances while continuing to perform their other jobs in the Final Finish Department. After the layoffs, Ms. Troup was required to work two days ahead of the production line instead of one, and she was pulled from the Final Finish Department to work on the line once or twice a week. Ms. Troup built soft valances, curtain rods, and mini-blind packages, and she loaded the units. She also helped with door and drawer prep in the recreational vehicles, cleaning, and puttying. Plaintiffs dispute that Ms. Troup was more qualified than they were.

---

fact, Mr. Albrecht talked at length about the process and criteria for selecting candidates, but he did not make any statement regarding the actual layoff decision. He does not even state that Plaintiffs were chosen to be laid off or that he participated in the final layoff decision. Interestingly, he states in paragraph 3 of his Affidavit: "I am *aware* that Forest River employees, Nellie Ray [ ], Mary Weldy [ ], were laid off from Plant 27. . . ." *Id*. at ¶ 3 (emphasis added).

Initially, Ms. Heltzel had been hired to assist Plaintiffs building valances and subsequently gained experience working on the line before the layoffs. While working with Plaintiffs, she cut fabric, covered boxes, did curtains, and did curtain prep. Ms. Ray confirmed that Ms. Heltzel went wherever she was needed and that she also worked on the line sometimes. Ms. Heltzel left Forest River's employment in August 2006.

## C. Analysis

Plaintiffs Nellie Ray and Mary "Helen" Weldy allege in their Complaint that they were discriminated against based on their age in violation of the ADEA, 29 U.S.C. § 621 *et seq*., when they were laid off from Forest River in June 2006 at the ages of 62 and 59, respectively. Forest River seeks summary judgment, arguing that the reason for Plaintiffs' layoff was their lack of transferable skills, or at least their lack of willingness to use their skills in other jobs, and was not for any discriminatory reason. Plaintiffs attempt to avoid summary judgment under the direct method of proof by asserting direct evidence of discriminatory animus through remarks by decisionmakers and by offering circumstantial evidence that Forest River's explanation for their layoff is a pretext for discrimination.[7]

The ADEA prohibits an employer from discharging an individual because of her age. *See* 29 U.S.C. § 623(a)(1); *Mach v. Will County Sheriff*, – F.3d –, –, 2009 WL 2750256, at * 3 (7th Cir. Sept. 1, 2009) (citing *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 641 (7th Cir. 2008)). Recently, the United States Supreme Court held that a plaintiff alleging discrimination under the ADEA bears the burden of persuasion to demonstrate that her age was the "but-for" cause of the challenged

---

[7] Although Forest River seeks summary judgment under both the direct and indirect methods of proof, because Plaintiffs do not invoke the indirect method, the Court limits its discussion to the direct method relied upon by Plaintiffs. *See Mach v. Will County Sheriff*, – F.3d –, –, 2009 WL 2750256, at * 3 & n. 3 (7th Cir. Sept. 1, 2009).

adverse employment action.  *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2352 (2009).  The

direct method of proof upon which Plaintiffs rely requires direct evidence or circumstantial evidence

that Forest River terminated Plaintiffs' employment because of their age.  *Mach*, – F.3d at –, 2009

WL 2750256,  at * 3 (citing *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007);

*Sylvester v. SOS Children's Vills. Ill., Inc*, 453 F.3d 900, 902-03 (7th Cir. 2006)).

"Direct evidence typically requires an admission of discriminatory animus, but a plaintiff

may also produce circumstantial evidence that establishes the employer's discriminatory motive

through a longer chain of inferences."  *Id.* (citing *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106,

1114-15 (7th Cir. 2009); *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008); *Isbell v. Allstate Ins.

Co.*, 418 F.3d 788, 794 (7th Cir. 2005)).  Such circumstantial evidence includes:

> (1) suspicious timing, ambiguous oral or written statements, or behavior toward or
> comments directed at other employees in the protected group;
> (2) evidence, whether or not rigorously statistical, that similarly situated employees
> outside the protected class received systematically better treatment; and
> (3) evidence that the employee was qualified for the job in question but was passed
> over in favor of a person outside the protected class and the employer's reason is a
> pretext for discrimination.

*Nagle*, 554 F.3d at 1114-15 (quoting *Hemsworth*, 476 F.3d at 491).  "Whether the plaintiff

proceeding according to the direct method relies on direct evidence or circumstantial evidence, she

can avoid summary judgment for the other party by 'creat[ing] a triable issue of whether the adverse

employment action of which [s]he complains had a discriminatory motivation.'"  *Rudin v. Lincoln

Land Cmty. College*, 420 F.3d 712, 721 (7th Cir. 2005) (citation omitted) (alterations in original).

Plaintiffs in this case offer both direct evidence of discriminatory animus as well as circumstantial

evidence to demonstrate pretext.

*1. Direct Evidence of Discriminatory Motive*

Plaintiffs have produced direct evidence of discriminatory comments related to Plaintiffs' age and their employment made by Mr. Carner in his role as a decisionmaker and as someone with input into the final decision at or near the time of the decision to terminate Plaintiffs' employment. *See Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 272 (7th Cir. 2004) (recognizing that statements indicating a decisionmaker's bias concerning a plaintiff's . . . age "may be direct or circumstantial evidence of intentional discrimination if they are sufficiently connected to the employment decision, i.e., made by the decisionmaker . . . and made close in time to the adverse action"). First, Mr. Dixon, a group leader in the Final Finish Department, albeit not Plaintiffs' direct supervisor, testified that, shortly after Plaintiffs' termination, he and Mr. Carner had a discussion about why Plaintiffs were chosen for the layoff. During that conversation, Mr. Carner told Mr. Dixon that he had selected Plaintiffs for layoff because "they were too old to move around the plant to do other jobs" or "they were too old to move around the final finish department." Pl. Exh. 4, ¶ 3. Mr. Dixon also remembered Mr. Carner referring to Plaintiffs as the "old ladies" on many occasions prior to the layoff. *Id*. at ¶ 4. Second, on several occasions approximately one month prior to the layoff, Mr. Carner began making unkind statements about Plaintiffs to Ms. Helzel, one of Plaintiffs' co-workers. Mr. Carner referred to them as "old bitches," he stated that Plaintiffs were not capable of learning anything other than making valances because they were set in their ways on account of their age, and he said things such as "Them old bags need to go[.]" Pl. Exh. 2, ¶ 9. These comments constitute direct evidence of discrimination.

To the extent the discriminatory comments together are argued to be nothing more than "stray remarks," they nevertheless support an inference of discrimination because they were made

by Mr. Carner in his role as a decisionmaker who directly influenced the thinking of the other decisionmaker–Mr. Albrecht, were made within a time period proximate to the layoffs, and were made directly in relation to the layoffs. *See Mach*, – F.3d at –, 2009 WL 2750256, at * 4 (recognizing that "stray remarks" may support an inference of discrimination if they "(1) [were] made by the decision-maker, (2) around the time of the decision, and (3) referred to the challenged employment action") (citing *Hemsworth*, 476 F.3d at 491); *see also Hasan v. Foley & Lardner, LLP*, 552 F.3d 520, 528 (7th Cir. 2008); *Merillat v. Metal Spinners,* Inc., 470 F.3d 685, 694-95 (7th Cir. 2006); *Hunt v. City of Markham, Ill.*, 219 F.3d 649, 652-53 (7th Cir. 2000). Plaintiffs have offered sufficient direct evidence of discrimination to survive summary judgment and to take their claims to a jury.

Forest River attempts to diminish the role of Mr. Carner in the layoff process to distance his comments from the final decision. "To constitute direct evidence of discrimination, a statement must relate to the motivation of the decision-maker responsible for the contested decision." *Ezell v. Potter*, 400 F.3d 1041, 1051 (7th Cir. 2005) (citing *Wichmann v. Bd. of Trs. of S. Illinois U.*, 180 F.3d 791, 801 (7th Cir. 1999); *Rothman v. Emory U.*, 123 F.3d 446, 451 (7th Cir. 1997)). In *Ezell*, the Postmaster who made the termination decision accepted the recommendation of plaintiff's supervisors who had made comments manifesting a discriminatory intent, and the court imputed the supervisors' discriminatory motive to the Postmaster. *Id.* (citing *Hunt*, 219 F.3d at 652-53). In *Hunt*, the Seventh Circuit affirmed that

> the fact that someone who is not involved in the employment decision of which the plaintiff complains expressed discriminatory feelings is not evidence that the decision had a discriminatory motivation. That is simple common sense. It is different when the decision makers themselves, or those who provide input into the decision, express such feelings (1) around the time of, and (2) in reference to, the

adverse employment action complained of.  For then it may be possible to infer that
the decision makers were influenced by those feelings in making their decision.

219 F.3d at 652-53 (internal citations omitted).

Once it became clear that layoffs were necessary, Mr. Carner, as Plant Manager, conferred
with Mr. Albrecht, the Production Manager, and Plant 27's group leaders and human resources
representatives to develop a process for identifying candidates for layoff.  Ms. Littlejohn's
recommendations for employment action were subject to Mr. Carner's approval, and Mr. Carner and
Mr. Albrecht approved the decision to layoff Plaintiffs.  Although Mr. Carner's Affidavit avers that
he did not have *sole* authority to make the layoff decision, he does not deny that he was one of the
final decisionmakers.  In fact, Mr. Carner told Mr. Dixon, a group leader in the Final Finish
Department of Plant 27, that he had selected Plaintiffs for termination.  Ms. Garza, the Human
Resources Manager, testified that she received the list of candidates for layoff from Mr. Carner
several days prior to the June 2, 2006 layoffs.  Neither Mr. Carner nor Mr. Albrecht testify that only
Mr. Albrecht made the final decision, and Mr. Albrecht does not even mention the final decision in
his Affidavit; only Ms. Garza states that Mr. Albrecht made the final decision.  The evidence viewed
in the light most favorable to Plaintiffs is that Mr. Carner and Mr. Albrecht together approved Ms.
Littlejohn's recommendation to layoff Plaintiffs, rendering Mr. Carner a decisionmaker.

In addition, Mr. Carner provided sufficient input into the decisionmaking process to impute
his motives to Mr. Albrecht.  Mr. Albrecht, as Production Manager, does not allege having any
personal knowledge of Plaintiffs' alleged shortcomings other than his brief interaction with Plaintiffs
on two occasions related to establishing the one-day "bank" in January 2006.  Yet, on unrelated
performance issues, Mr. Albrecht avers that he "understood that Nellie and [Helen] were generally
unwilling to participate in the cross-training and were uncooperative when asked to help in other

29

areas in Plant 27.  I further understood that Nellie and [Helen] would leave work at the end of their own workday, even if their supervisor asked them to stay to help other employees." Def. Exh. 3, ¶ 8.  Viewed in the light most favorable to Plaintiffs, Mr. Albrecht's use of "understood" implies that he learned about Plaintiffs from others and not from first-hand knowledge.  Ms. Littlejohn provided the initial recommendations for layoff, and Mr. Carner and Mr. Albrecht conferred regarding whom to layoff.  Forest River's argument that Plaintiffs have not suggested that Mr. Albrecht knew of or was influenced by Mr. Carner's alleged comments heard by Mr. Dixon and Ms. Heltzel is misplaced; no such knowledge by Mr. Albrecht is required.   Rather, it is Mr. Carner's recommendations to and discussions with Mr. Albrecht, allegedly tainted by discriminatory animus, that permit his earlier derogatory comments to become evidence of discrimination in the employment decision.  *See Ezell*, 400 F.3d at 1051; *Hunt*, 219 F.3d at 652-53.

In an unsuccessful attempt to lessen the impact of the testimony of Mr. Dixon and Ms. Heltzel, Forest River launches numerous attacks on the reliability of their testimony.  Forest River argues that Ms. Heltzel's declaration lacks context for the comments, fails to include basic information about where the comments were made, to whom they were made, whether she heard them directly or someone told her that he made them, or when they were made.  As for timing, Ms. Heltzel, who was hired within the six months prior to the layoff, specifies that Mr. Carner's comments were made approximately one month prior to the layoff and that Ms. Littlejohn's comments were made prior to the layoff.  Forest River's broader arguments that Ms. Heltzel's declaration lacks indicia of reliability are asserted under the guise of the motion to strike, which the Court has recommended be denied because the arguments go to the weight and credibility of Ms. Heltzel's testimony.  Forest River argues in its Reply Brief that Mr. Dixon "erroneously (and

understandably) identified Mr. Carner as having selected the Plaintiffs for layoff." Def, p. 8-9. This argument by counsel is contrary to Mr. Dixon's sworn Declaration, which states that Mr. Carner told him that he had selected Plaintiffs for layoff. It is not the place of the Court to judge credibility or to weigh testimony on summary judgment.

## 2. *Circumstantial Evidence of Discriminatory Motive*

Plaintiffs also offer circumstantial evidence of discrimination, arguing that Ms. Littlejohn evinced a discriminatory motivation, that her given explanation for selecting Plaintiffs to be laid off is pretextual, and that she influenced the adverse employment decision. Ms. Littlejohn, a Group Leader in the Final Finish Department, was Plaintiffs' direct supervisor. Ms. Heltzel, who began working for Forest River approximately six months prior to the layoffs, testified that Ms. Littlejohn repeatedly referred to Plaintiffs as "fucking old bags" and stated that they were "too old to move around the plant." Pl. Exh. 2, ¶ 9. Prior to the layoff, Mr. Dixon heard Ms. Littlejohn refer to Plaintiffs as either the "old ladies" or the "old bitches." Pl. Exh. 4, ¶ 4. There is no indication in the record that Ms. Littlejohn used these terms endearingly. Ms. Littlejohn testified that she recommended Plaintiffs as candidates for layoff because they were unwilling to assist in other areas of the Final Finish Department and on the production line and they lacked skills required to perform other jobs in the plant. Thus, while her name-calling alone may not be evidence of discrimination, her comment that Plaintiffs were "too old to move around the plant" is related to the reasons she gave for selecting them for the layoff.

Ms. Littlejohn appears to have played a significant role in the layoff recommendations. The "more senior management," presumably Mr. Carner and Mr. Albrecht, directed Ms. Littlejohn to evaluate and recommend individuals to be laid off from the Final Finish Department, and she

recommended Plaintiffs. Ms. Littlejohn was not simply a co-worker making disparaging comments detached from the employment decision; rather, her recommendations were a primary consideration in Mr. Carner's and Mr. Albrecht's decision to terminate Plaintiffs' employment. *See, e.g.*, *Hunt,* 219 F.3d at 652-53 ("Emanating from a source that influenced the personnel action (or nonaction) of which these plaintiffs complain, the derogatory comments became evidence of discrimination . . . ."); *Wallace v. SMC Pneumatics, Inc.*,103 F.3d 1394, 1400-01 (7th Cir. 1997) (finding no evidence that a coequal who had made a discriminatory remark had any authority or influence over the decision leading to the adverse employment action).

As with Mr. Carner, Forest River attempts to lessen Ms. Littlejohn's influence by characterizing Mr. Albrecht as insulated in his decision, arguing in its brief that, "having had experience with Plaintiffs," Mr. Albrecht approved placing them on the layoff list. Def. Reply, p. 8. As discussed earlier, Mr. Albrecht's "understanding" of Plaintiffs' deficiencies, namely that Plaintiffs were generally unwilling to participate in the cross-training, were uncooperative when asked to help in other areas in Plant 27, and would leave work at the end of their own workday, even if their supervisor asked them to stay to help other employees, appear to be drawn from others and not from his personal experience with Plaintiffs. These "understandings" are consistent with the reasons forwarded by Ms. Littlejohn for placing Plaintiffs on the layoff list. While Mr. Albrecht did have minimal experience with Plaintiffs in the meetings related to their production rate, there is no question that one of the factors he considered in his decision was Ms. Littlejohn's recommendations. At a minimum, there is a genuine issue of material fact as to the level of influence Ms. Littlejohn's recommendations had on the final decision and, thus, whether any alleged bias of hers played a role in the final decision to layoff Plaintiffs.

Similarly, Mr. Albrecht stated that he "specifically checked into Nellie and [Helen]'s performance, attitude and ability to work in other areas. It appeared that they did not want to work in other departments-even occasionally; and other employees had higher levels of skills and experience both inside and outside the Final Finish Department." Def. Exh. 3, ¶ 11. This statement is also consistent with Ms. Littlejohn's given explanation for selecting Plaintiffs and her testimony that Plaintiffs complained during cross training meetings about long days, that Plaintiffs would frequently complain or find excuses not to assist when asked to help in other areas, and that Plaintiffs would leave without helping when explicitly asked to stay late to help in other areas of the Department.

However, in their Declarations, Plaintiffs both dispute that the tasks that might have been asked of them, had they been retained, were beyond their abilities as they had performed many of the same tasks in the past at Plant 27. They dispute that they ever left work early or without permission; that they were ever uncooperative or unwilling to lend a hand to perform other work when asked; that they ever complained to management about their work assignments; that they were ever offered cross training by management; or that they ever declined cross training. Plaintiffs dispute that they were ever counseled or disciplined for any of these alleged negative attributes.

In fact, Ms. Littlejohn is the only person to testify as to these attributes of Plaintiffs based on first-hand knowledge. However, there is no evidence that Ms. Littlejohn ever documented these alleged shortcomings or issued any written warnings based on these alleged faults as she did with Plaintiffs' rate of production and the "bank" of valances.[8] In contrast, Ms. Littlejohn issued written

_____

[8] In its reply brief, Forest River argues that "Plaintiffs boldly assert that they were never issued disciplinary warnings" in their response brief in direct contradiction to their testimony that they were issued written warnings. Def. Reply, p. 3 (citing Pl. Resp., p. 17). However, the written warnings that Plaintiffs received were related to the Plaintiffs' "time frame of completed units" and not to their attitude or their willingness to perform other jobs, stay late, or receive

warnings to Ms. Troup (one of the two younger people chosen to assume Plaintiffs' duties after they were laid off) on five occasions involving performance issues. Ms. Heltzel and Mr. Dixon each testified that Ms. Littlejohn never criticized Plaintiffs' job performance but only criticized their age. From his position as a Group Leader in the other half of the Final Finish Department, Mr. Dixon believed that Plaintiffs were efficient workers, were hardworking, and came to work every day on time. Mr. Dixon recalls Ms. Littlejohn complimenting the efficiency of Plaintiffs' system for producing valances. Ms. Heltzel, a co-worker, who trained with Plaintiffs and worked with them part of the time, was impressed with Plaintiffs' skill and hard work, and she felt that they had an efficient production method and that they worked quickly. From Ms. Heltzel's observations, Plaintiffs never missed work, never complained, and never refused to do any task asked of them. Ms. Heltzel testified that Ms. Littlejohn, without first asking Ms. Heltzel, made a photocopy of the notes Ms. Heltzel had been keeping at Mr. Carner's direction while training with Plaintiffs.

As noted by Forest River, Mr. Dixon was not Plaintiffs' direct supervisor and Ms. Heltzel's knowledge of Plaintiffs was limited to her interaction with them; however, the weight given to the evidence and the credibility of the witnesses is for the jury to determine, not the Court. A reasonable jury could conclude, in light of Plaintiffs' denial of the allegations by Ms. Littlejohn, that Ms. Littlejohn fabricated these allegations to conceal her true motivation based on Plaintiffs' age.

A jury could also reasonably infer from these various accounts that Mr. Albrecht's approval of Plaintiffs for layoff resulted *only* because Ms. Littlejohn depicted the Plaintiffs in an unfavorable light because of age-based bias and then recommended them for layoff, thus providing the necessary causation between Ms. Littlejohn's alleged discriminatory animus and Mr. Albrecht's approval.

---

cross training, which is what they reference in their Declarations.

*See Bahl v. Royal Indemn. Co.*, 115 F.3d 1283, 1293 (7th Cir. 1997) ("[Derogatory] comments cannot defeat summary judgment in favor of an employer unless they are both proximate and related to the employment decision in question."); *Conn v. GATX Terminals Corp.*, 18 F.3d 417, 420 (7th Cir. 1994) (holding that if a supervisor recommends that a worker be fired based on a discriminatory animus and the company fires the employee on nondiscriminatory grounds, the discriminatory motive of the supervisor is irrelevant); *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1147 (7th Cir. 1993) (holding that reasonable jurors could conclude that the plaintiff's immediate superior, who conveyed his belief that older workers are inferior to his subordinates and to lawyers in the litigation and who made the recommendation that led to the plaintiff's discharge, lied to his superiors about the plaintiff's skills to ensure that the recommendation would be approved); *see also Shager v. Upjohn Co.,* 913 F.2d 398, 405 (7th Cir. 1990) (holding that the question of whether the unbiased decisionmaker's decision was tainted by the influence and recommendation of the biased supervisor was for the jury to determine); *Flaten v. United Parcel Serv., Inc.*, No. 08 C 4772, 2009 WL 2351734, at * 4 (N.D. Ill. July 27, 2009) (finding that the discriminatory statements were irrelevant because the record demonstrated that the speaker was not the decisionmaker, did not participate in the termination of plaintiff, and did not otherwise influence the ultimate decisionmaker).

"An employer cannot escape responsibility for wilful discrimination by multiple layers of paper review, when the facts on which the reviewers rely have been filtered by a manager determined to purge the labor force of older workers." *Gusman*, 986 F.2d at 1147. The Court finds

that Plaintiffs have provided sufficient direct and circumstantial evidence of discriminatory motive to create a genuine issue for trial.

### 3. Forest River's Legitimate Business Justification

Forest River argues that Plaintiffs have failed to rebut or squarely address Forest River's legitimate business reason for selecting Plaintiffs for layoff. However, Plaintiffs are not proceeding under the indirect method, and, thus, do not need the assistance of the familiar burden-shifting test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[9] Under the direct method, Forest River cannot win summary judgment by simply articulating a legitimate business rationale because Plaintiffs have produced sufficient direct evidence, in the form of Mr. Carner's statements to Mr. Dixon and Ms. Heltzel, to survive summary judgment.

To the extent Plaintiffs also rely on circumstantial evidence in the form of "evidence that . . . the employer's reason is a pretext for discrimination," *Nagle*, 554 F.3d at 1114-15,[10] Plaintiffs have done more than simply "demonstrate that the employer made a mistake or that the employer's reason was not good enough to support its decision," *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 323 (7th Cir. 2003) (discussing pretext under the indirect, burden-shifting method). The Court has already found that Plaintiffs have constructed a "convincing mosaic" of circumstantial evidence that "allows a jury to infer intentional discrimination by the

---

[9] All of the cases cited by Forest River in support of this argument discussing pretext address a plaintiff proceeding under the indirect method of proof, which requires a plaintiff first to demonstrate a prima facie case of discrimination and then, once the defendant articulates a legitimate, nondiscriminatory business reason for the adverse employment action, the plaintiff must prove it is a pretext for discrimination.. *See Johal v. Little Lady Foods, Inc.*, 434 F.3d 943, 946 (7th Cir. 2006); *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 323 (7th Cir. 2003); *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 984 (7th Cir. 1999); *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1993).

[10] The Seventh Circuit has described the evidentiary analysis for pretext under the direct and indirect methods as substantially the same. *See Venturelli v. ARC Cmty. Servs., Inc.*, 350 F.3d 592, 601 (7th Cir. 2003).

decisionmaker" by pointing "directly to a discriminatory reason for the employer's action." *See Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003); *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994). This Court is not sitting as a super-personnel department, judging the wisdom of any of Forest River's legitimate decisions; rather, the inferences to be drawn from the evidence are left to the jury. *See Balderston*, 328 F.3d at 323; *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 984 (7th Cir. 1999).

For example, Forest River argues that Plaintiffs' assertion that they were "efficient" contradicts their deposition statements that they were "routinely behind their production schedule" and "counseled for failure to achieve the production 'bank'" and, thus, that the assertion is self-serving and should not be considered. Def. Reply, p. 4. Yet, Ms. Heltzel and Mr. Dixon stated that Plaintiffs were efficient; it is not merely argument by Plaintiffs. Moreover, it is conceivable that Plaintiffs were efficient in their process yet behind the production schedule as a result of the increased production experienced by Forest River or as a result of the absence of a co-worker. Forest River also argues that Plaintiffs "did not have any experience performing other jobs in the Final Finish Department. Neither woman had experience installing curtains or valances." Def. Reply, p. 11. Although they did not have experience in those two specific areas, they did have experience staging curtains, rough sweeping, puttying, and putting on stickers.

Forest River also alleges that, at the heart of the layoff decision was whether Plaintiffs would be willing to leave their valance area, which they were reluctant to do, to work in an area where they had little to no experience, where they were reluctant to go. These arguments are rebutted by Plaintiffs' Declarations, which specifically deny that they were reluctant to work in other areas, refused to provide assistance, or declined retraining. Moreover, Forest River's attorney's rationale

that, if Plaintiffs had been young men, their lack of transferable skills and reluctance to work in other areas would have doomed them is rebutted by Mr. Carner's statement to Mr. Dixon that he selected them for layoff because "they were too old to move around the plant to do other jobs" or "they were too old to move around the final finish department." Pl. Exh. 4, ¶ 3.

Finally, Forest River asserts in its opening brief, but does not pursue in its reply, that it is entitled to an inference of nondiscrimination because it hired Plaintiffs when they were already well into the protected class, both being in their mid-and-upper 50s when they began their employment and because Mr. Carner, who articulated a discriminatory motive for Plaintiffs' layoff and was a decisionmaker, interviewed Plaintiffs as part of the hiring process. *See Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1044 (7th Cir. 2000) (quoting *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1147 (7th Cir. 1994); citing *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 744-45 (7th Cir. 1999); *EEOC v. Our Lady of the Resurrection Med. Ctr.*, 77 F.3d 145, 152 (7th Cir. 1996); *Rand*, 42 F.3d at 1147). In *Johnson*, the Seventh Circuit reasoned that the psychological assumption underlying the same-actor inference may not hold true on the facts of a given case and, thus, is unlikely to be dispositive in many cases. 170 F.3d at 745. In this case, Plaintiffs have rebutted any of the asserted inferences by the direct and circumstantial evidence offered related to the statements of both Mr. Carner and Ms. Littlejohn such that the resolution of the inferences is left to the jury.

A reasonable jury, having heard and seen the witnesses, may indeed conclude that, Forest River laid off Plaintiffs in June 2006 as part of a reduction in force, even though the quality of Plaintiffs' work was satisfactory and Plaintiffs were skilled at building valances. The jury may find that Plaintiffs were unable to build the requisite "bank" of valances despite the assistance provided by Forest River through additional employees, new equipment, and revised performance

expectations and that Plaintiffs were unable and unwilling to perform cross-functional duties.[11]  On

the other hand, based on the evidence presented by Plaintiffs, a reasonable jury could also find that

Plaintiffs' direct supervisor, Ms. Littlejohn, and the Plant Manager, Mr. Carner, were biased against

Plaintiffs because they were older, that Mr. Carner was a final decisionmaker, that Ms. Littlejohn's

criticisms of Plaintiffs' work are unfounded and fabricated, that Ms. Littlejohn had a direct influence

on the information used by the decisionmakers, and that Plaintiffs were selected for the layoff as a

result of their age.  *See, e.g., Stephney v. Target Corp.*, No. 1:07-cv-0814, 2009 WL 73779, at * 10

(S.D. Ind. Jan. 8, 2009) (holding that a defendant cannot survive summary judgment under the direct

method by asserting a legitimate business purpose when there is sufficient evidence for a reasonable

jury to find that the stated purpose is a pretext for discrimination).

## CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that District Court Judge (1) **DENY**

Plaintiffs' Motion to Strike Portions of Paragraph 3 of Ruth Vanvorst's Affidavit [DE 31]; (2)

**DENY** Plaintiffs' Motion to Strike Paragraphs 5 & 6 of Angela Garza's Affidavit [DE 32]; (3)

**DENY** Plaintiffs' Motion to Strike Paragraphs 13 & 14 of Steve Carner's Affidavit [DE 33]; (4)

**GRANT in part and DENY in part** Plaintiffs' Motion to Strike Paragraph 9 of Shannon Troup's

Affidavit [DE 35] and **STRIKE** the first sentence of paragraph 9; (5) **GRANT in part and DENY**

**in part** Defendant's Motion to Strike [DE 40] and **STRIKE** paragraphs 10 and 11 of Ms. Heltzel's

---

[11] As part of Forest River's argument that its reasons for laying off Plaintiffs was not pretextual, Forest River explains that it was not the quality of Plaintiffs' work on the valances but rather their quantity of production, which led Forest River to perceive Plaintiffs as weaker than other employees, even if their performance could be considered satisfactory.  Def. Reply, p. 12 (citing *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 693 (7th Cir. 2006) (analyzing pretext related to a reduction in force under the indirect method) (quoting *Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 573 (7th Cir. 1998)).

Declaration; (6) **DENY** Forest River's Motion for Summary Judgment [DE 25]; and (7) **DENY as moot** Plaintiffs' Motion for Oral Argument [DE 46].

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have ten (10) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

SO ORDERED this 14th day of October, 2009.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record