UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| NELLIE RAY and MARY WELDY, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 2:07 CV 246 |
| ) | |
| FOREST RIVER, INC., ) | |
| ) | |
| Defendant. ) | |

## OPINION and ORDER

I.     INTRODUCTION

Plaintiffs Nellie Ray and Mary Weldy filed a complaint alleging that defendant Forest River, Inc., discriminated against them on the basis of their age. (DE # 1.) After the close of discovery, defendant moved for summary judgment. (DE # 25.) Plaintiffs filed a brief in response (DE # 36) and moved to strike various portions of affidavits accompanying defendant's motion. (DE ## 31, 32, 33.) Defendant then replied (DE# 42) and moved to strike portions of the evidence submitted by plaintiff. (DE # 40.) Plaintiffs also moved for oral argument. (DE # 46.)

This court referred these motions to Magistrate Judge Paul R. Cherry for a report and recommendation (DE # 45), which Magistrate Judge Cherry duly issued. (DE # 48.) Defendant objected (DE # 49) to the report and recommendation, and plaintiffs responded. (DE # 50.) Because no party objects to Magistrate Judge Cherry's recommendations regarding the motions to strike and motion for oral argument, the court will adopt these recommendations. Because defendant objects to Magistrate Judge

Cherry's recommendation regarding its motion for summary judgment, the court will review the evidence and consider the issues related to defendant's motion for summary judgment *de novo*. 28 U.S.C. § 636(b)(1)(C). For the reasons explained below, the court overrules defendant's objections to Magistrate Judge Cherry's recommendation on defendant's motion for summary judgment, adopts Magistrate Judge Cherry's report and recommendation, and denies defendant's motion for summary judgment.

II.     BACKGROUND

Defendant Forest River is a manufacturer of recreational vehicles ("RVs"). Plaintiffs Nelly Ray and Mary Weldy were interviewed and hired in 2002 by defendant's Plant 27 manager, Steve Carner, at ages 58 and 55, respectively. Plaintiffs worked in the "Final Finish" department of Plant 27, where they built valances, curtains, and other parts for the RVs. Plaintiffs also sometimes prepared other decorative items for installation in RVs. Plaintiffs would occasionally do other tasks such as puttying and rough sweeping, but were not trained to do any other jobs. Plaintiffs worked in a mezzanine or raised loft area away from the production line and the rest of the work force.

Defendant required plaintiffs to maintain a one-day "bank" of completed valances that were ready for installation. Plaintiffs began to fall behind in production in December 2005, and repeatedly asked their immediate superviser, Ann Littlejohn, who reported to Carner, for assistance. That same month, defendant (via Littlejohn) issued

2

written personnel action notices to plaintiffs, which stated that each plaintiff needed to "work on her time frame of completed units" otherwise "units will be taken from her."

In January 2006, plaintiffs met with Littlejohn, Carner, and Carner's superior and Plant 27 production manager Jamie Albrecht. Defendant's human resources manager, Angie Garza, also attended. Littlejohn, Carner, and Albrecht each attest that at the meeting, the parties established that plaintiffs would maintain a one-day bank. Ray testified that she felt it was expected that they maintain a two-day bank. Weldy testified that after the meeting plaintiffs began to fall behind because they were asked to "pick up another position" by doing the inserts for "slide outs" when another employee was absent. (Def.'s Ex. 2 at 104.) Weldy also testified that although plaintiffs were not meeting their bank requirements, they still stayed ahead of the production line's need for valances. Defendant sometimes assigned other employees to assist plaintiffs. For example, another employee, Nitza, temporarily assisted with building inserts. Another employee, Angie Heltzel, was hired in January 2006 to help plaintiffs build valances.

Littlejohn attested that in 2006, Plant 27 placed a greater emphasis on cross-training employees and that she met with Final Finish department employees to discuss having everyone pitch-in to support other areas of the department. Littlejohn claims plaintiffs frequently complained during these meetings because they did not want to work long days. Littlejohn also testified that plaintiffs were asked numerous times to help in other departments but plaintiffs would complain or find excuses as to why they could not assist. Littlejohn stated that she would occasionally ask plaintiffs to stay late

3

and that plaintiffs usually left work without helping. Carner attested that plaintiffs complained every time they were asked to help others, intentionally spent more time than was necessary to build curtains and valances in order to avoid helping out in the production line, and on more than one occasion flatly refused to assist in other areas of production.

Plaintiffs claimed they were never told by anyone at Forest River that the company wanted plaintiffs to become "cross trained" to perform other jobs. Plaintiffs also attested that management never discussed with them whether they were able to perform other work. Ray testified that prior to the increase in production, plaintiffs would help out with other jobs like puttying and rough sweeping once they had accumulated a two-day bank, but that when valance production demand increased, they did not help in other departments. Plaintiffs also attest that they never refused to do an extra job or cooperate, nor did they ever make excuses to avoid helping. Plaintiffs claim that as a matter of course they did not leave the premises without checking with Littlejohn, did not leave early without permission, and were never counseled or disciplined for doing so.

Rick Dixon was, like Littlejohn, a group leader in the Final Finish department. Dixon and Littlejohn each supervised half of the Final Finish staff. Dixon's half did not include plaintiffs; thus, he did not serve as their immediate supervisor. However, Dixon stated in his affidavit that he observed plaintiffs at work and found them to be efficient, hard working, and punctual. Dixon stated that plaintiffs work product was excellent

and remembered Littlejohn complimenting plaintiffs on their efficiency. Heltzel, who was hired to help plaintiffs build valances, testified that she was impressed with plaintiffs' skill and hard work and felt that plaintiffs were efficient, worked well together, and produced excellent work. Heltzel also testified that plaintiffs never missed work, complained, or refused to perform tasks asked of them.

Albrecht and Carner stated in their affidavits that production at Plant 27 decreased in late spring 2006, requiring the company to layoff some employees. Littlejohn attested that Carner told her that the workforce would be reduced due to a production decrease and that she "received some advance notice of the layoff, during which time I was to evaluate and recommend particular employees for layoff." (Def.'s Ex. 5 at ¶ 11.) Littlejohn attested that she was told to consider the skills of each employee and whether he or she could perform several different jobs, as well as the employee's attitude and willingness to do extra work. Littlejohn stated that she recommended plaintiffs because they were unwilling to assist in other areas of the Final Finish department and production line, lacked skills to do other jobs in the plant, and had previously offered to be laid off.

Carner stated that he asked group leaders like Littlejohn to recommend candidates for layoff and advised them to try to keep multi-skilled employees. Carner stated that the layoff decisions were "based on performance, attitude, and skill" and denies that age played a role in the layoff decision. Albrecht stated that before the layoff, he "checked into" plaintiffs' performance, attitude, and ability to work in other

areas, and that "[i]t appeared they did not want to work in other departments." (Def.'s Ex. 3 at ¶ 11.) Garza "understood" that plaintiffs were considered for layoff because they were unable to keep up with production, lacked experience and skills in other areas of production, and had uncooperative attitudes. (Def.'s Ex. 9 at ¶ 5.) Garza stated that age was not a consideration in the layoff decision. Plaintiffs claimed that they were ahead of schedule at the time when they were laid off.

The facts are unclear as to who ultimately decided that plaintiffs would be terminated. Littlejohn stated that she did not have the authority to make the ultimate decision about the layoff, and was not aware of the final decision until the layoff occurred. Carner stated that he asked group leaders to recommend candidates for layoff, and then "reviewed candidates for layoff with the group leaders." (Def.'s Ex. 4 at ¶ 10.) Albrecht stated that he "reviewed candidates for layoff with the Plant Manager [Carner], and we looked at performance levels, skills, including cross-training, and the attitude of the employees. We did not consider age as a factor in the decisions." (Def.'s Ex. 3 at ¶ 9.) Garza, defendant's human resources manager, stated that she was "involved" in the layoff decision-making process, but lacked independent authority to make the final decision; Garza stated that "[t]hat decision rested with Jamie Albrecht." (Def.'s Ex. 9 at ¶ 6.) Dixon stated that Carner told him that Carner had been the one to select plaintiffs for layoff.

Heltzel, who was hired in 2006 to help plaintiffs build valances, attested that approximately one month before the layoff, Carner referred to plaintiffs as "old

6

Bitches," stated that plaintiffs were not capable of learning anything other than making valances because they were set in their ways on account of their age, and said things such as "Them old bags need to go." (Pls.' Ex. 2 at 5.) However, Carner never criticized plaintiffs' work performance in front of Heltzel; on the contrary, Carner instructed Heltzel to learn everything she could about building valances from plaintiffs. Dixon also stated that he heard Carner refer to plaintiffs as the "old ladies" on numerous occasions "prior to their layoff." (Pls.' Ex. 4 at ¶ 4.) Dixon recalled that during a conversation with Carner within a week after the layoff, Carner stated that he had selected plaintiffs for layoff because "they were too old to move around the plant to do other jobs" or "they were too old to move around the final finish department." (Pls.' Ex. 4 at ¶ 3.)

Heltzel attested that Littlejohn, plaintiffs' immediate supervisor, said that plaintiffs were "too old to move around the plant" and repeatedly referred to plaintiffs as "fucking old bags" at some point "before" they were let go. (Pls.' Ex. 2 at 5.) Dixon also attested that Littlejohn referred to plaintiffs as either the "old ladies" or the "old bitches" at points prior to plaintiffs' termination. (Pls.' Ex. 4 at ¶ 4.)

At the time of the layoff, plaintiffs Ray and Weldy were 62 and 59 years old, respectively. Albrecht claimed that the layoff affected employees of various ages and genders. After the layoffs, plaintiffs' duties were assigned to Heltzel and Troup, who at the time of the layoffs were approximately ages 39 and 23, respectively. Heltzel and

Troup also continued to do other jobs in the Final Finish department and Troup was pulled from the department to work on the production line once or twice a week.

Plaintiffs dispute that Troup was more qualified than they were. Heltzel attested that when she was occasionally taken off of working on valances to assist in the production line, she observed that Troup struggled to keep up with the pace of the production line while doing multiple tasks, including caulking, puttying, installing curtain rods. Heltzel testified that Troup spent time socializing and had trouble focusing and following instructions. Defendant issued Troup five written warnings in 2005 and 2006, two of which mentioned the possibility of termination if improvements did not occur in the pace and quality of her work.

## III.  LEGAL STANDARD

The FEDERAL RULES OF CIVIL PROCEDURE mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). RULE 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must

8

prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe*, 42 F.3d at 443.

**IV. DISCUSSION**

Plaintiffs claim that defendant fired them because of their age in violation of the ADEA. Plaintiffs may support their ADEA claims through either the direct or indirect methods of proof. *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 641 (7th Cir. 2008). "The direct method of proof involves direct evidence, such as near-admissions by the employer, as well as more attenuated circumstantial evidence that suggests discrimination albeit through a longer chain of inferences." *Id.* (internal quotation marks and citations omitted). On the other hand, "the indirect method of proof involves a certain subset of circumstantial evidence that includes how the employer treats similarly situated employees, and conforms to the prescription of *McDonnell Douglas Corp. v. Green*." *Id.* (internal quotation marks and citations omitted). Plaintiffs argue

9

their claim solely based on the direct method of proof, and we limit our discussion accordingly. *Mach v. Will County Sheriff,* 580 F.3d 495, 498 (7th Cir. 2009) (expressly limiting discussion to direct method of proof because plaintiff argued his claim solely on that basis).

The direct method requires plaintiffs to produce direct or circumstantial evidence that defendant terminated them because of their age. *Mach,* 580 F.3d at 499. Direct evidence is evidence which, if believed, will prove the particular fact in question without reliance upon inference or presumption. *Rudin v. Lincoln Land Cmty. College,* 420 F.3d 712, 720 (7th Cir. 2005). Typically, direct evidence comes in the form of an admission of discriminatory animus. *Mach,* 580 F.3d at 499. However, a plaintiff may also produce circumstantial evidence that establishes the employer's discriminatory motive through a longer chain of inferences. *Id.; see also Isbell v. Allstate Ins. Co.,* 418 F.3d 788, 794 (7th Cir. 2005) (referring to the ubiquitous "convincing mosaic" of circumstantial evidence). "Circumstantial evidence can come in the form of suspicious timing or behavior, or evidence that younger but similarly situated employees received better treatment." *Tubergen v. St. Vincent Hosp. and Health Care Ctr., Inc.,* 517 F.3d 470, 473-74 (7th Cir. 2008). Regardless of the type of evidence employed, an ADEA plaintiff must ultimately prove that her age was the "but-for" cause of the employment action. *Gross v. FBL Fin. Servs., Inc.,* 129 S. Ct. 2343, 2352 (2009).

Defendants have objected to Magistrate Judge Cherry's recommendation that this court find that there exist genuine issues of material fact precluding summary

judgments in defendant's favor. Reviewing the evidence *de novo,* as the court is required to do, the court comes to the same conclusion as Magistrate Judge Cherry. As Magistrate Judge Cherry stated in his report and recommendation, plaintiffs have produced direct evidence of discriminatory comments related to plaintiffs' age, which were made during periods of time close to plaintiffs' termination. Though these comments were reportedly made by two individuals (Carner, the plant manager, and Littlejohn, plaintiff's direct supervisor), in order to resolve the present motion the court needs only to address the comments made by Carner.

Plaintiffs have produced evidence that Carner, the Plant 27 manager, told Dixon, a group leader in the Final Finish department of Plant 27, within a week after the layoff that Carner selected plaintiffs for layoff because they were "too old to move around the plant to do other jobs" or "too old to move around the final finish department." (Pls.' Ex. 4 at ¶ 3.) Dixon also heard Carner refer to plaintiffs as the "old ladies" prior to their layoff. (Pls.' Ex. 4 at ¶ 4.) Approximately one month before the layoff, Heltzel, who was hired to help plaintiffs build valances, observed Carner saying that plaintiffs were not capable of learning anything other than making valances because they were set in their ways on account of their age," saying things like "[t]hem old bags need to go," and referring to plaintiffs as "old Bitches." (Pls.' Ex. 2 at 5.)

Defendant attempts to downplay the role Carner played in the decisionmaking process, suggesting that he was not the final decisionmaker. Rather, defendant argues, Albrecht– who has not been accused of making any discriminatory comments–was the

11

final decisionmaker. However, the evidence, viewed in a light most favorable to plaintiffs, suggests that Carner was a critical player in choosing which employees would be laid off. Indeed, Carner appears to have been at the center of the decisionmaking process. According to the evidence presented, Littlejohn recommended plaintiffs for termination, and this recommendation was subject to Carner's approval. Carner and Albrecht conferred about the decision. Albrecht, in his own affidavit, uses the term "we" when describing how the company selected individuals for layoff: "I reviewed candidates for layoff with the Plant Manager [Carner], and *we* looked at performance levels, skills, including cross-training, and the attitude of the employees. *We* did not consider age as a factor in the decisions." (Def.'s Ex. 3 at ¶ 9 (emphasis added).) Dixon attested that Carner himself told Dixon that Carner had selected plaintiffs for termination.

Carner denies having *sole* authority to make the decision, but does not deny being one of the final decisionmakers. Only Garza, defendant's human resources manager, alludes to Albrecht making the decision alone, attesting: "[t]hat decision rested with Jamie Albrecht." Notably, Garza opines only that the power belonged to Albrecht, not that the decision to terminate plaintiffs was made by Albrecht, much less solely by Albrecht. The evidence, reviewed *de novo* and viewed in a light most favorable to plaintiffs, suggests that Carner was a decisionmaker who made age-related comments that a reasonable jury could interpret as revealing discriminatory motives underlying the decision to terminate plaintiffs' employment. *At the least* there is a

12

genuine issue as to whether Carner was a decisionmaker, and that is sufficient to prevent summary judgment for defendant.[1]

Defendant devotes most of its brief to its argument that even if Carner was a decisionmaker and did make comments evidencing discriminatory intent, under the Supreme Court's recent ruling in *Gross v. FBL Financial Services, Inc.*, 129 S. Ct. 2343 (2009), ADEA plaintiffs must still prove that age discrimination was the "but-for" cause underlying the employment action. Defendant reasons that because it has presented evidence of other non-discriminatory reasons for terminating plaintiffs' employment (i.e., a reduction in staff due to decreased production), it has shown that discriminatory reasons were not the "but-for" cause for plaintiffs' termination. Thus, according to defendant, plaintiffs' claims necessarily fail. In order to address defendant's argument, the court must briefly review the history of the ADEA's causation requirement.

In the past, courts have interpreted the burden of persuasion as to the ADEA's causation requirement in much the same way as they had interpreted that of Title VII of the Civil Rights Act.[2] Specifically, courts had repeatedly held that once an ADEA

---

[1] Magistrate Judge Cherry further considered whether Littlejohn and Carner's input in the decisionmaking process– even if the decision was ultimately made by Albrecht – was sufficient such that Littlejohn and/or Carner's motives could be imputed to Albrecht (also known as the "cat's paw" analysis). The court does not find it necessary to engage in this analysis given the fact that there is a genuine issue as to whether Carner himself was a decisionmaker. However, the court finds no error in Magistrate Judge Cherry's analysis in this regard.

[2] Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, prohibits discrimination in employment based on race, color, religion, sex, or national origin.

plaintiff showed that discrimination was a motivating or substantial factor in the employer's action, the burden shifted to the employer to show that it would have taken the same action regardless of that impermissible consideration. *Gross,* 129 S. Ct. at 2347 (outlining history of relevant jurisprudence). Actions involving such facts were termed "mixed motives" cases, and they allowed a plaintiff to succeed on a discrimination claim even if the employer had multiple reasons–some permissible and some impermissible–for taking an employment action against an employee.

Last year, in *Gross*, the Supreme Court overruled these holdings in the context of the ADEA and clarified that, because of the differences between the statutory texts of the ADEA and Title VII, mixed motives burden-shifting was not permitted in ADEA cases like it was in Title VII cases. *Id.* at 2351. Instead, in ADEA cases, a plaintiff must ultimately prove by a preponderance of the evidence that age discrimination was the "but-for" cause of the employment action, and the burden never shifts to the defendant to prove otherwise. *Id.* In other words, an ADEA plaintiff may not succeed by showing that age discrimination was one of many reasons for the employment decision; the ADEA plaintiff must show that age discrimination was *the* reason, and the burden always remains with him or her to do so. *See id.* at 2350.

To the extent that defendant repeats *Gross's* holding and point out that plaintiffs must ultimately show that age discrimination was the "but-for" cause for their termination, defendant is correct. However, plaintiffs are not required to *prove* this in

order to survive defendant's motion for summary judgment. As the Seventh Circuit has summarized:

> To prevail on an ADEA claim, a plaintiff 'must prove that age was the "but-for" cause of the employer's adverse decision.' *Gross v. FBL Fin. Servs., Inc.,* --- U.S. ----, 129 S. Ct. 2343, 2350, 174 L. Ed. 2d 119 (2009). At the summary-judgment stage, however, the plaintiff only needs to create a genuine issue as to whether the employer discriminated against him on the basis of his age.

*Guinto v. Exelon Generation Co.,* LLC, 341 Fed. Appx. 240, 245 (7th Cir. 2009); *see also Syster v. Nw. Airlink/Pinnacle Airlines, Inc.,* No. 1:08-CV-172 JVB, 2010 WL 2162608, at *5 (N.D. Ind. May 28, 2010) (citing *Gross* and holding that "[t]o survive summary judgment in an age discrimination case Plaintiff must come forward with evidence from which a reasonable jury could conclude that his age was the but-for cause of Defendant's decision to fire him").

In *Gross,* the question was the propriety of a mixed-motive jury instruction; the case had reached its final phases, and the issue involved the plaintiff's ultimate burden to convince a fact-finder of the defendant's liability. *Gross* did not involve summary judgment procedures, and did not alter the usual summary judgment standard, which simply requires the plaintiff to create a genuine issue of material fact in order to survive a defendant's motion. In sum, if plaintiffs can create a genuine issue of fact as to whether age discrimination was the "but-for" cause for their termination, summary judgment for defendant is not appropriate. As explained above, in this case, plaintiffs have done so.

Defendant also argues that it has set forth sufficient legitimate business reasons for plaintiffs' termination to justify summary judgment in its favor. However, plaintiffs rely on the *direct* method of proof in this case, and therefore defendant does not necessarily benefit from articulating legitimate business reasons in the same way as it might in some instances involving the *indirect* method of proof.[3] The test under the direct method of proof is this: plaintiffs "can avoid summary judgment for the other party by creating a triable issue of whether the adverse employment action of which [he] complains had a discriminatory motivation.'" *Nagle v. Village of Calumet Park,* 554 F.3d 1106, 1115 (7th Cir. 2009) (internal quotation marks omitted, alterations in *Nagle*). Defendant's purportedly legitimate business reasons for its selection of plaintiffs for termination is one consideration in determining whether there is a triable issue regarding discriminatory motivation, but it is not the only consideration. As explained above, the facts, as viewed in a light most favorable to plaintiffs, present a triable issue as to whether plaintiffs' termination was motivated by a discriminatory motivation on the part of Carner.

In support of its argument that it has set forth legitimate business reasons for plaintiffs' termination, defendant attempts to analogize this case to others where summary judgment for the defendant was deemed appropriate. Defendant first argues

---

[3] Under the indirect method of proof, a plaintiff must first demonstrate a prima facie case of discrimination. The burden then shifts to the defendant to articulate a legitimate, non-discriminatory business reason for the employment action. At that point, the plaintiff must prove that the given reason is a pretext for discrimination. *Johal v. Little Lady Foods, Inc.*, 434 F.3d 943, 946 (7th Cir. 2006).

16

that this case is analogous to *Kelly v. Moser, Patterson, & Sheridan, LLP*, 348 Fed. Appx. 746 (3d Cir. 2009), a case decided by the Third Circuit Court of Appeals. At issue in that case was a lone comment, "older & better paid / younger & cheaper," that appeared in the plaintiff's personnel file. The comment was part of the human resources director's notes, which were written following a meeting between the human resources director and one of the firm's partners after the plaintiff's termination. The plaintiff argued that the comment was evidence of discriminatory intent, but the firm argued that the plaintiff himself had used those words when he accused the firm of firing him for being older during his termination meeting, and that the human resources director was simply recording the plaintiff's own comment in writing.

The Third Circuit held that even if the plaintiff's version of the facts was correct, "this single phrase in his employment file is the only evidence in this case that age may have played any role in the law firm's decision" and the plaintiff's long, tumultuous employment history made it evident that no reasonable jury could conclude that age played a determinative role in his termination. *Id.* at 750-51. The court also held: "Even though unlikely, at most age was a secondary consideration in the law firm's decision, not a determinative 'but for' factor. This is insufficient under *Gross*." *Id.* at 751.

Defendant also argues that this case is akin to *Martino v. MCI Communications Services, Inc.*, 574 F.3d 447 (7th Cir. 2009). In that case, the plaintiff claimed that the fact that his manager sometimes called him an "oldtimer" was evidence of age discrimination. The plaintiff also had a history of failing to meet his employer's needs,

17

and the company was making structural changes that would have made the plaintiff's skill set obsolete. In the end, the court concluded that the plaintiff's claim failed because his manager was not involved in the decision to terminate the plaintiff, and "[a]t best, he has done no more than show that his age possibly solidified the decision to include him in the RIF. But a reasonable jury could only conclude that he would have been fired anyway; age was not a but-for cause." *Id.* at 455.

The case at hand is distinguishable from both *Kelly* and *Martino*. *Kelly* involved a single purportedly discriminatory remark. *Martino* involved remarks by a non-decisionmaker. The comments Carner allegedly made in this case occurred more than once, were made to more than one person, were linked to the employment action, and were made by an individual who, when considering the evidence in a light most favorable to plaintiffs, was a decisionmaker. Unlike in *Kelly* or *Martino,* a reasonable jury in this case *could* conclude that age was a but-for cause for plaintiffs' termination. It could also decide that age was *not* a but-for cause. But the evidence is not so clear cut that the decision should be taken away from the jury. Finally, to the extent that defendant relies on *Kelly* or *Martino* for their holdings that a plaintiff must prove "but-for" causation, the court has addressed this argument, at length, in its analysis of *Gross,* above.

In a footnote, defendant half-heartedly objects to Magistrate Judge Cherry's rejection of defendant's "same actor" defense. (Def.'s Obj. at 4 n.1.) Under the "same actor" doctrine, a defendant is allowed an inference of non-discrimination where the

same individual hires and fires the aggrieved employee. *Martino,* 574 F.3d at 455. As the Seventh Circuit has explained, "[c]ommon sense tells us that it's unlikely for a person to suddenly develop a strong bias against older folks." *Id.* at 454-55. But the Seventh Circuit has also "cautioned courts not to place 'too strong a reliance' on the inference of nondiscrimination." *Id.* at 455. Some recent Seventh Circuit decisions have also suggested that the "same actor" defense may be flawed in some instances. *See, e.g., Petts v. Rockledge Furniture, LLC,* 534 F.3d 715, 724-25 (7th Cir. 2008); *Filar v. Bd. of Educ. of City of Chicago,* 526 F.3d 1054, 1065 n.4 (7th Cir. 2008). In any event, the court agrees with Magistrate Judge Cherry that whatever inference defendant might be entitled to by virtue of the fact that Carner both hired and fired plaintiffs is rebutted in this case by the evidence discussed at length above.

V. CONCLUSION

For the reasons explained above, this court **ACCEPTS** the report and recommendation of Magistrate Judge Cherry (DE # 48). The court therefore **DENIES** defendant's motion for summary judgment (DE # 25); **DENIES AS MOOT** plaintiffs' motion for oral argument (DE # 46); **DENIES** plaintiffs' motions to strike (DE # 31, 32, 33); **GRANTS in part** and **DENIES in part** plaintiffs' motion to strike (DE # 35); and **GRANTS in part** and **DENIES in part** defendant's motion to strike (DE # 40);

            **SO ORDERED.**

Dated: August 10, 2010

            s/James T. Moody
            JUDGE JAMES T. MOODY
            UNITED STATES DISTRICT COURT